PEOPLE, *for Use of* RYAN, *v.* BOYES.

1. EVIDENCE—ORAL TESTIMONY—WRITTEN CONTRACTS.

Oral testimony, *held*, admissible to show the intent of the parties to a subcontract in writing, where uncertainty existed as to whether a certain item of work specified in the original contract was covered by the subcontract, the latter referring to the original contract, incorporating part thereof, but omitting other important parts.

2. TRIAL—PROOF—INSTRUCTIONS.

Where defendant submitted no proof as to the cost of a certain item of work which he had a right to charge to plaintiff's account, the trial court was not in error in withdrawing same from the consideration of the jury.

3. NEW TRIAL—APPEAL AND ERROR—PRACTICE.

Reasons which might have been presented to the trial court on a motion for a new trial cannot be considered by this court, on error, where no such motion was made.

Error to Kent; Perkins (Willis B.), J. Submitted October 23, 1919. (Docket No. 51.) Decided December 22, 1919.

Assumpsit by the people of the State of Michigan, for the use and benefit of Otis H. Ryan, against David W. Boyes and others on a contract for excavating for a water main. Judgment for plaintiff. Defendants bring error. Affirmed.

*Charles A. Watt, Ganson Taggart,* and *Henry T. Heald,* for appellants.

*Smedley & Linsey,* for appellee.

SHARPE, J. On May 10, 1915, the defendant Boyes entered into a contract with the city of Grand Rapids, in which he agreed to install a water main in said city

On admissibility of parol evidence to show intention of parties to written contract, see note in 17 L. R. A. 273.

for a distance of about two miles. Bids had been asked for this work, which was to be done in conformity with plans, specifications and blue prints, made a part of the contract. While a lump sum in payment was fixed in the contract, it was arrived at by computing a number of items which comprised the bids on the labor and material required in executing the work contemplated in the contract. In this contract Boyes agreed "to do all work and furnish all materials for laying a high pressure water main from water works pumping station, to Michigan street," according to the plans, specifications and drawings theretofore adopted by the board of public works of said city, which were made a part of the contract. The work included the digging of a trench for a 30-inch pipe and installing the pipe therein from Michigan street to a point designated as "Zero" on the drawings. From this point to the pumping station, a 48-inch pipe was to be installed. This particular work was described in the proposal as follows:

"Item 10-A.—For building and installing complete all cast iron pipe and specials, valves and brick masonry necessary to connect the 30-inch pipe to the discharge line at the pumping station, including excavation and back filling, replacing gravel and brick roadways, removing, replacing and cutting existing pipe lines and all incidental labor and materials, the sum of seven hundred dollars and no cents ($700.00) lump sum."

For this item, 109 feet in length, a lump sum of $700 had been bid by Boyes. For excavating for the trenches along the rest of the line, he was to receive 69 cents per lineal foot, except where rock was encountered, for which his agreed compensation was $4 per cubic yard. There was a provision for extra excavating, which will be hereafter referred to. The work was to be commenced within ten days after the

signing of the contract and to be completed on or before December 1, 1915; the time of beginning, rate of progress and time of completion being essential conditions of the contract. The board of public works was given the right, in case it appeared that the contractor was dilatory or did not employ sufficient force, to place additional men and teams on the work and render such assistance as it deemed advisable for the completion of the contract within the time fixed therefor, and charge the expenses thereof to the contractor.

Boyes subsequently associated the defendant Fitzpatrick with him as a partner, and they sublet a part of this work to the plaintiff by a contract entered into on May 17, 1915. This contract reads as follows:

"These articles of agreement, made this 17th day of May, A. D. 1915, by and between D. W. Boyes and James R. Fitzpatrick, of Grand Rapids, Michigan, party of the first part, and O. H. Ryan of Grand Rapids, Michigan, party of the second part,

"Witnesseth: In connection with the installation of that contract known as the East End Water Main contract extending from the city pumping station, at Coldbrook, Monroe and Ottawa streets to the intersection at Michigan avenue and Diamond street.

"The party of the second part agrees to perform the following work: Do all excavating, leaving ditch in a suitable condition to install pipe, valves, fittings, etc., excepting as hereinafter noted; all back filling, removing surplus excavation, removing all gravel where directed, carefully, and place to one side.

"The party of the second part agrees to remove dirt from ditch to subgrade after ditch has been refilled and leave same for replacing of gravel. Party of the second part agrees to put gravel back in the ditch if same can be put back with teams and scrapers, excess excavation to be loaded and hauled away.

"Party of the second part will put all pipe, valves and fittings into the ditch and handle same until bell and spigot ends are properly placed together (by party of the first part), remove all surplus material from streets after job is completed, excavate all rock.

"At creek crossing excavation will be done up to the walls of the bridges, pipe, etc., handled and swung over the sides of the bridge. The excavation in the creek and other work necessary will not be done by the party of the second part. At railroad crossings where tracks are removed, excavation, back filling, etc., will be done as heretofore mentioned. Where tracks are not removed excavating and loading will be done by parties of the first part, but the excavated material will be hauled and re-hauled by party of the second part. This provision applies to all work at street crossings.

"All underground work, if any, in the line of the ditch or within the four feet in the nature of water pipe, gas pipe, laterals, telephone service, or any underground wiring will be taken care of by the party of the first part (without expense to the party of the second part), unless damaged by the party of the second part. If anything is disturbed outside of line of ditch or outside of the four feet by the party of the second part, same will be taken care of by the party of the second part.

"All gravel excavated will be saved and stored if desired by the party of the first part.

"The party of the second part agrees to begin work within fifteen (15) days and have same completed not later than November 1st, A. D. 1915.

"The party of the first part agrees to pay the party of the second part at the rate of fifty-five (55) cents per lineal foot of ditch for all material excavated.

"For rock excavation the party of the first part agrees to pay to party of the second part four dollars ($4.00) per cubic yard.

"The party of the second part in performing his work agrees to do so in entire accordance with plans and specifications and under the direction of the engineer.

"The party of the second part can shore ditch at his discretion, unless shoring is required by the engineer.

"The party of the second part agrees to furnish to the party of the first part satisfactory surety bonds, the same as the first party furnished the city of Grand Rapids, namely, the sum of 25% of value of the con-

tract. These bonds to be by a surety company or by two acceptable individuals.

"The terms of payment are as follows:

"Party of the second part to be paid 85% of work performed up to the time of the preparation of each estimate and to be paid his *pro rata* share out of each estimate received by the party of the first part."

The meritorious question presented is whether or not plaintiff's contract included the excavation work between the point designated as "Zero" on the drawings and the pumping station, a distance, as before stated, of 109 feet, and particularly described in "Item 10-A." The plaintiff was somewhat delayed in his work, and the defendants Boyes and Fitzpatrick did all of the work under this item and also in extending the 30-inch main from "Zero" easterly for 361 feet. They seek to charge the plaintiff with the expense of this work, and, while he admits a liability for the 361 feet easterly of "Zero," he denies that any part of the work required to be done in "Item 10-A" was included in his contract. The defendants kept no separate account of the cost of the work done by them under "Item 10-A" from that done easterly of point "Zero."

The trial judge admitted, over defendants' objection, parol evidence tending to show the intent of the parties with reference to this item, and submitted the matter to the jury to determine whether the work in dispute was intended to be included in plaintiff's contract. He also instructed the jury that if they did not so find they should not consider the cost incurred by defendants for the work done easterly from point "Zero" as there was no proof submitted on which they could in any way base a division of the entire cost of the work by defendants at the west end of the job. The plaintiff had verdict and judgment for $3,709.69, and defendants appeal.

There are many assignments of error, but the defendants discuss them all under two heads:

*First.* Whether it should have been left to the jury to construe this contract on account of its ambiguity or uncertainty, and,

*Second.* Should the defendants lose their entire set-off (or practically all of it) through the confusion of the accounts.

1. Counsel insist that the words used in the written contract defining the work to be done by plaintiff are in no sense ambiguous or uncertain, and that the intent of the parties as expressed therein must govern. It thus becomes necessary to determine the undertaking of plaintiff in his contract, of which, as before stated, the contract of Boyes with the city and the proposal, plans, specifications and drawings form a part.

Boyes' contract with the city, under the heading, "Work Contemplated," provided:

"*First.* The contractor agrees to do all work and furnish all materials for laying a high pressure water main from water works pumping station, to Michigan streets,—Contract No. 1,—and do all the incidental work connected therewith and furnish all tools and materials for such work and such incidental work in the manner and under the conditions and requirements as described in the foregoing specifications and the accompanying drawings; which specifications and drawings have been approved and adopted by the board of public works of said city, and, together with all drawings and regulations referred to in such specifications and this contract as illustrating or describing any device used in the work, or details thereof, are hereby made a part of this contract."

The first paragraph of the general specifications prepared by the city officials, and under the heading, "Work Contemplated," provides:

"The work contemplated under this contract in the following specifications and plans accompanying same consists in excavating for and installing a 30-inch, high pressure, trunk-line water main from the water works pumping station * * * to Michigan street."

This in itself is somewhat contradictory of that part of the contract just quoted and of other portions of the specifications in that the 30-inch main was only to extend to the point marked "Zero" on the drawings. The main, as before stated, west of that point to the water works pumping station, was to be 48 inches. Sixty paragraphs in the specifications are employed to point out with particularity the work to be done in laying this 30-inch main. Then follows "Item 10-A," under the heading, "Installation at the Pumping Station," and there are seven paragraphs in which the manner of doing this work is particularly stated.

Turning now to plaintiff's contract with defendants, we find that the first paragraph thereof discloses the fact that the allusion therein to defendant Boyes' contract with the city may well be said to have been inserted for the purpose of thereafter defining the work to be done by plaintiff as a subcontractor thereunder; that, in effect, this paragraph provides that the plaintiff agrees to do a part of the work which Boyes contracted to do in "the installation of that contract known as the East End Water Main contract, extending from the city pumping station * * * to the intersection of Michigan avenue and Diamond street."

In the succeeding paragraphs, so far as material to the matter now being considered, plaintiff agrees:

1. To do all the excavating of a ditch for the installation of the pipes.
2. To replace the earth removed after the pipes are installed.
3. To place the pipes, etc., in the ditch and handle the same until connected.

As bearing on defendants' claim that plaintiff agreed to do all the excavating required by defendants' contract with the city, let us examine "Item 3-A" of defendants' proposal. It reads as follows:

"Item 3-A.—For excavating one hundred (100) cu-

bic yards, more or less, and back filling with suitable material as specified, including transporting, placing and removing cofferdams, bracing, sheathing, pumping and all other incidental work, the sum of two dollars and no cents ($2.00) per cubic yard."

In the specifications, this item is explained at length:

"Item No. 3-A.—Extra Excavation and Back Filling. Extent.—

"25. Whenever it is necessary in the judgment of the engineer to excavate to an extra depth below the elevations indicated on the plans such excavations shall be made. It is the intention to excavate to such depth as found necessary to obtain suitable foundations for the structure.

"Refilling.—

"26. When such excavations are made by the order of the engineer refilling shall be made with good earth or gravel placed in thin layers and thoroughly tamped with the same quality of earth or gravel and placed in the same manner as was specified under Item No. 1-A.

"Measurement and Compensation.—

"27. Extra excavation will be measured by the cubic yard for the volume actually placed as required. The price bid per cubic yard under this item shall cover all labor, tools, and appurtenances, including draining and bracing required to excavate materials and refilling with gravel."

There is no such provision in plaintiff's contract. Could it be fairly claimed that if such extra excavation and back filling had been required to be done as is provided for in this item, and for which Boyes was to be paid by the cubic yard, plaintiff must do it under his contract, for which he was paid by the lineal foot? A consideration of the several provisions of the contracts to which attention has been called leads us to the conclusion that there is uncertainty as to whether or not plaintiff's contract covered the excavating to

208—Mich.—5.

be done by Boyes under "Item 10-A." The reasons therefor may be thus summarized:

(*a*) The language employed in the first paragraph of plaintiff's contract may well be claimed to have been used only for the purpose of describing the particular contract of Boyes with the city, of which plaintiff was agreeing to do a part of the work.

(*b*) In the proposal of defendant Boyes for excavating for the 30-inch main, he bid a fixed sum per lineal foot, and an inference may be drawn therefrom that plaintiff, whose compensation for excavating was for a less sum per lineal foot than that bid by Boyes, was only intended to do like excavating.

(*c*) No provision was made for extra payment to plaintiff should he be required to do the extra excavating required by "Item 3-A," thereby inferentially leading to the conclusion that the excavating to be done by him was only that for which Boyes was to be paid by the lineal foot.

(*d*) The word "ditch" used in plaintiff's contract may have been intended to be used in the same sense as the word "trench" in Boyes' contract, and not intended to cover the wide excavation required under the work in "Item 10-A."

(*e*) The work to be done under "Item 10-A" is specifically described and not included in the specifications relative to excavating, and the bid therefor was a lump sum.

The claim of the defendants that it is the duty of the court, and not the jury, to construe a written contract is elemental. But, having concluded, as did the trial judge, that the obligation of the plaintiff to do the excavating under "Item 10-A" was doubtful, the right to admit oral proof tending to show the construction the parties themselves put on their several obligations and also to show the real intent of the parties as to the matter in dispute is not open to question under the decisions of this court. In *Brown* v. *A. F. Bartlett & Co.*, 201 Mich. 268, the authorities are collected and discussed at length. At page 277, it is said:

"For plaintiff it is denied that the testimony complained of is an attempt to contradict the plain provisions of the written agreement, but its legitimate purpose is to supplement the same, make clear apparent inconsistencies and show in what sense the parties themselves understood and used uncertain and ambiguous words or phrases. The rule invoked upon that proposition is thus well stated in 17 Cyc. p. 682:

" 'Where any doubt arises as to the true sense and meaning of the words themselves, or any difficulty as to their application under the surrounding circumstances, the sense and meaning of the language may be investigated and ascertained by evidence *dehors* the instrument, for both reason and common sense agree that by no other means can the language of the instrument be made to speak the real mind of the party. In this case parol evidence is admissible *ex necessitate*.' "

2. It was exceedingly unfortunate that the defendants did not offer any proof as to the cost of the excavating done by them east of point "Zero," a distance of 361 feet. Plaintiff concedes this would have been a proper item of set-off. We cannot consider the claim of surprise or mistake on defendants' part relative to it. We can only determine whether or not there was error committed by the trial court. There was no proof offered from which the jury could determine the cost of this work. This was conceded by defendants' counsel when the matter was under discussion on the trial when he said: "There is no earthly way of telling about the different work done." There was consequently no error in the withdrawal of this item from the consideration of the jury. The reasons now urged might have been presented on a motion for a new trial, but none was made and they cannot be considered by us.

The judgment will be affirmed, with costs to plaintiff.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.